873 A.2d 1261

La' Tia **HOLLOMAN**

v.

**CIRCUIT CITY STORES, INC. et al.**

**No. 1145, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

May 5, 2005.

Brian J. Markovitz (Timothy F. Maloney, Jay P. Holland, on brief), Greenbelt, for appellant.

Lauri E. Cleary, Bethesda, Heather A. Mullen, Norfolk, VA (Jennifer S. Thomas, Bethesda, Susan C. North, Norfolk, VA, Teri C. Miles, Richmond, VA, on brief), for appellee.

Panel DAVIS, EYLER, DEBORAH S., BLOOM, THEODORE G. (retired, specially assigned), JJ.

DAVIS, J.

Appellant, La'tia Holloman, quit her retail sales job with appellee, Circuit City Stores, Inc. and sued appellee in the Circuit Court for Prince George's County, claiming she had been discriminated against and constructively discharged.[1] Appellee filed a motion to stay the judicial proceedings and to compel arbitration, which the court granted.

Thereafter, believing it was necessary "to preserve all her rights," appellant filed an arbitration complaint against appellee. She also filed, in the circuit court, a notice of appeal from the circuit court's order compelling arbitration and a motion to stay the arbitration proceedings during the pendency of this appeal. The circuit court granted appellant's motion to stay the arbitration proceedings, and appellant presents two questions for our review, which we have rephrased:

1. Did the circuit court err when it found that the parties' arbitration agreement is enforceable, despite appellee's power to unilaterally modify the agreement?

2. Did the circuit court err when it found that appellant had knowingly and voluntarily waived her constitutional and substantive rights, despite a factual dispute over whether appellant ever received a copy of the arbitration rules?

Appellee noted a cross-appeal, presenting a single question:

3. Did the circuit court err in staying the arbitration, as it had already determined that the parties had entered into a valid and enforceable arbitration agreement?

Finding no error, we shall affirm the judgment.

## FACTUAL BACKGROUND

In September 2001, appellant applied for a job at appellee's store in Marlow Heights, Maryland, in Prince George's Coun-

---

1. Appellant also sued Curtis Brown, the Circuit City employee she alleges harassed her at work. According to appellant, she has mailed all pleadings to Brown's last known address, but he has not responded or otherwise participated in the litigation.

ty. The first page of her employment application lists several "selection tools" that appellee uses to select its employees. One of those tools was appellee's "Dispute Resolution Agreement" (DRA), which is described on the employment application: "This agreement requires you and Circuit City to arbitrate certain legal disputes related to your application for employment or employment with Circuit City." The application then adds, "Circuit City will consider your application only if this agreement is signed."

At the top of the DRA it is stated:

If you wish to be considered for employment you must read and sign the following agreement. You will be considered as an applicant when you have signed the Agreement. ***Included with this application is the Circuit City Dispute Resolution Rules and Procedures. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If the Rules and Procedures are not included in this booklet you must request a copy from a Circuit City representative prior to signing the Agreement.*** You will note that if you sign at this time you do have three (3) days to withdraw your consent. You may, of course, take the package with you and return with it signed, if you wish to continue your application process.

(Emphasis added.) The DRA then explains:

[B]oth Circuit City and I agree to settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator....

I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application or candidacy for employment, employment or cessation of employment, Circuit City may use this Agreement in support of its request to the court to dismiss the lawsuit and require me instead to use arbitration.

\* \* \*

. . . I further agree that if I commence an arbitration, it will be conducted in accordance with the "Circuit City Dispute Resolution Rules and Procedures."

I understand that neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Circuit City and me. I further understand that my signature to this Agreement in no way guarantees that Circuit City will offer me employment. If Circuit City does offer me employment and I become employed at Circuit City, this Agreement in no way alters the "at-will" status of my employment. I understand that my employment, compensation and terms and conditions of employment can be altered or terminated, with or without cause, and with or without notice, at any time, at the option of either Circuit City or myself.

Appellant signed her initials on the page on which those provisions appear. At the top of the next page, which appellant signed with her full name, it is stated in bold typeface:

**The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures affect your legal rights. By signing this Agreement, you acknowledge receipt of the Dispute Resolution Rules and Procedures. You may wish to seek legal advice before signing this Dispute Resolution Agreement.**

Finally, the last paragraph of the agreement states:

This Agreement will be enforceable through the application process, my employment, and thereafter with respect to any such claims arising from or relating to my application or candidacy for employment, employment or cessation of employment with Circuit City. We then must arbitrate all such employment-related claims, and we may not file a lawsuit in court.

A Circuit City representative signed the DRA on the Company's behalf.

The Dispute Resolution Rules appear in a separate twelve-page document, and comprise just nineteen rules. The bulk of

appellant's argument on appeal devolves upon our analysis of Rule 19, which states:

> Rule 19. TERMINATION OR MODIFICATION OF DISPUTE RESOLUTION AGREEMENT OR DISPUTE RESOLUTION RULES AND PROCEDURES.
>
> Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on March 1st of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures in effect at the time the Arbitration Request Form and accompanying filing fee, or Request for Waiver of Filing Fee is received by the Company. Notice may be given by posting a written notice by February 1st of each year at all Circuit City locations (including locations of affiliated companies). A copy of the text of any modification to the Agreement or Rules and Procedures will be published in the Applicant Packet, which will be available at such locations after March 1st of each year.

Appellee did modify the rules during appellant's term of employment, but the changes were minor and assume no relevance here.

Appellant alleges that, after she began working for appellee, she was assigned to a "mentor," co-defendant Curtis Brown, who sexually harassed her and assaulted her. Brown was fired, and appellant subsequently quit, claiming that her departure was a constructive discharge "due to fear for her physical safety and because she had lost all confidence in the ability of the managers at Circuit City to provide a safe work environment for its female employees."

Appellant filed charges of sexual harassment with the EEOC and received a "right to sue" letter. She then filed a six-count complaint in the circuit court, to which appellee responded by moving the court to compel appellant to arbitrate her claims. The circuit court granted appellee's motion, ordering arbitration and staying the judicial proceedings.

Appellant subsequently filed an Arbitration Request Form against appellee, after which she filed, in the circuit court, both a notice of appeal and a motion styled "Petition to Stay Arbitration Proceedings Pending Appeal," which appellee opposed. After a hearing, the circuit court granted appellant's petition for a stay pending appeal.

## LEGAL ANALYSIS

### I

Appellant first argues that the circuit court erred in finding that the putative arbitration agreement was supported by consideration. She contends that appellee's "ability to unilaterally terminate and modify the Agreement makes its promise to arbitrate illusory."

In *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003), Cheek argued that his arbitration agreement with his employer, United HealthCare, was unenforceable because it was unsupported by consideration. Cheek argued that the following language in the agreement rendered United HealthCare's promise to arbitrate illusory:

United HealthCare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice.

The Court of Appeals agreed with Cheek. Judge Battaglia, writing for the Court, explained why:

The determination of whether there is an agreement to arbitrate, of course, depends on contract principles since arbitration is a matter of contract. As such, a party cannot be required to submit any dispute to arbitration that it has not agreed to submit.

To be binding and enforceable, contracts ordinarily require consideration. In Maryland, consideration may be established by showing a benefit to the promisor or a detriment to the promisee. In particular, we have recognized that the [f]orbearance to exercise a right or pursue a

claim can constitute [ ] sufficient consideration to support [an] . . . agreement.

A promise becomes consideration for another promise only when it constitutes a binding obligation. Without a binding obligation, sufficient consideration does not exist to support a legally enforceable agreement.

An "illusory promise" appears to be a promise, but it does not actually bind or obligate the promisor to anything. An illusory promise is composed of words in a promissory form that promise nothing.

United initiated the arbitration with Cheek; it has not revoked nor in any way altered the Arbitration Policy with Cheek at any time. Nonetheless, the fact that "United HealthCare reserves the right to alter, amend, modify, or revoke the [Arbitration] Policy at its sole and absolute discretion at any time with or without notice" creates no real promise, and therefore, insufficient consideration to support an enforceable agreement to arbitrate. Indeed, the plain and unambiguous language of the clause appears to allow United to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because United can "revoke" the Policy "at any time." Thus, we conclude that United's "promise" to arbitrate employment disputes is entirely illusory, and therefore, no real promise at all.

*Id.* at 147–49, 835 A.2d 656 (citations and quotation marks omitted; brackets and alterations in *Cheek* ).

Appellant argues that *Cheek* is controlling and mandates the same result in this case. She contends that the reservation of rights in *Cheek* is identical to Rule 19 of appellee's arbitration rules (quoted in full *supra* at p. 336, 873 A.2d at 1263), which essentially states that "Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on March 1st of any year upon giving 30 calendar days written notice to Associates." We agree with appellee, however, that the notice requirement in Rule 19 materially distin-

guishes the present case from *Cheek,* and we hold that this arbitration agreement was supported by consideration.

Section 77 of the *Restatement (Second) of Contracts*—upon which the *Cheek* Court relied—provides:

A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performance unless

(a) each of the alternative performances would have been consideration if it alone had been bargained for; or

(b) one of the alternative performances would have been consideration and there is or appears to the parties to be a substantial possibility that before the promisor exercises his choice events may eliminate the alternatives which would not have been consideration.

The *Restatement's* second, fourth, and fifth illustrations of this principle demonstrate that the notice requirement in Rule 19 distinguishes appellee's arbitration agreement from the illusory promise in *Cheeks.* Illustration 2 states:

2. A promises to act as B's agent for three years from a future date on certain terms; B agrees that A may so act, but reserves the power to terminate the agreement at any time. B's agreement is not consideration, since it involves no promise by him.

Comment b then explains the nuance seen in illustrations 4 and 5:

b. Alternative promises. A promise in the alternative may be made because each of the alternative performances is the object of desire to the promisee. Or the promisee may desire one performance only, but the promisor may reserve an alternative which he may deem advantageous. In either type of case the promise is consideration if it cannot be kept without some action or forbearance which would be consideration if it alone were bargained for. But if the promisor has an unfettered choice of alternatives, and one alternative would not have been consideration if separately bargained for, the promise in the alternative is not consideration. **Illustrations:**

\* \* \*

4. A agrees to sell and B to buy between 400 and 600 tons of fertilizer in installments as ordered by B, A reserving the right to terminate the agreement at any time without notice. B's promise is without consideration.

5. A promises B to act as B's agent for three years on certain terms, starting immediately; B agrees that A may so act, *but reserves the power to terminate the agreement on 30 days notice. B's agreement is consideration, since he promises to continue the agency for at least 30 days.*

(Emphasis added.) Accordingly, because appellee agreed to be bound to give appellant notice before altering the terms of the arbitration agreement, and appellant would then have had an opportunity to decline to continue her employment under appellee's new terms, we hold that their agreement was supported by consideration.

The cases appellant cites do not support her argument. First, *Penn v. Ryan's Family Steak Houses,* 269 F.3d 753 (7th Cir.2001), was not a case in which an employer limited its power to alter arbitration rules with a notice requirement, like Rule 19 in this case. Rather, in *Penn,* as a condition of employment, the employee entered into an arbitration agreement with a third-party arbitrator, "EDS," and the extent of EDS's promise was only "to provide an arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute." *Id.* at 759. That was the actual contract language composing the entirety of the promise to arbitrate. The Seventh Circuit reasoned:

Nothing in the contract provides any details about the nature of the forum that EDS will provide or sets standards with which EDS must comply; EDS could fulfill its promise by providing Penn and Ryan's with a coin toss. Although Penn was given the EDS Rules along with the contract he signed, and we will assume that the Rules form part of the contract, adding the Rules to the mix does nothing to make EDS's commitment more concrete, because the Rules specifically give EDS the sole, unilateral discretion to modify or amend them.

*Id.* at 759–60. *Penn,* therefore, was on point with *Cheek,* unlike the present case.[2]

Appellant also seeks solace in *Hill v. Peoplesoft USA, Inc.,* 333 F.Supp.2d 398 (D.Md.2004), but the agreement in *Hill* did not impose a notice requirement, which materially distinguishes it from the present case. *See id.* at 401 ("The IDS program and policy provides that it is 'subject to change without notice' and that 'PeopleSoft reserves the right to make changes and adjustments to the IDS program.' "). Similarly, there was no such notice provision in *Shaffer v. ACS Government Services, Inc.,* 321 F.Supp.2d 682 (D.Md.2004), another case that simply does not stand for the propositions for which appellant cites it.

Nor is appellant aided by *Hooters of America, Inc. v. Phillips,* 39 F.Supp.2d 582 (D.S.C.1998), *aff'd,* 173 F.3d 933 (4th Cir.1999). The parties' arbitration agreement in that case stated, "These Rules and Procedures may be modified, in whole or in part, by the Company from time to time, without notice," and "the Company may cancel the Agreement and Procedure on 30 days written notice." *Id.* at 617.[3] Because there was an avenue of performance which was illusory, *i.e.,* that the rules could be modified without notice, the case is on point with *Cheek* and unlike the present case.

Appellant also relies on *Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165 (9th Cir.2003), but the court's analysis in that

---

**2.** A much closer Seventh Circuit case was *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634 (7th Cir.1999), which actually involved Rule 19 of appellee's arbitration rules. The majority opinion in that case held that the arbitration agreement was supported by consideration, but it did not expressly address Rule 19. The dissent, however, argued that Rule 19 rendered Circuit City's promise illusory. *Id.* at 638–39 (Rovner, J., dissenting). Obviously the majority rejected Judge Rovner's analysis.

**3.** In her brief, appellant chose to quote the latter portion of the Hooters agreement, with its 30 days' notice requirement, but appellant omitted the former provision, which disbands with any notice requirement. The facts appellant omitted were crucial to an accurate understanding of the case.

decision shows its patent inapplicability. In *Ingle*, the court analyzed Circuit City's Rule 19, and its notice requirement, but that analysis was made in the broader context of the court's inquiry as to the substantive unconscionableness of the arbitration agreement. The court's opinion included this express disclaimer, conspicuously omitted from the quotation contained in appellant's brief:

> Our holding with regard to the provision granting Circuit City the unilateral authority to modify or terminate the arbitration agreement does not collide with that of the Sixth Circuit in *Morrison* [*v. Circuit City Stores, Inc.*], 317 F.3d [646 (6th Cir.2003)]. The court in *Morrison* held that Circuit City's ability to modify or terminate the arbitration agreement unilaterally did not, by itself, render the contract unenforceable. In this case, we hold that the provision is substantively unconscionable. *We draw no conclusion as to whether this term, by itself, renders the contract unenforceable.*

*Id.* at 1179 n. 23 (emphasis added). Appellant has attempted, unsuccessfully, to stretch the Ninth Circuit's opinion farther than it will reach.[4]

Finally, we briefly mention that we have not considered the myriad unreported decisions cited in both parties' briefs. *See Alternatives Unlimited, Inc. v. New Balt. City Bd. of School Comm'rs*, 155 Md.App. 415, 457 n. 4, 843 A.2d 252 (2004).[5]

## II

We summarily dispose of appellant's next argument, in which she asserts that "the circuit court erred when it implic-

---

4. The Ninth Circuit's reference to *Morrison* is particularly relevant because, in *Morrison*, the Sixth Circuit rejected exactly the argument appellant asserts here. *See Morrison*, 317 F.3d at 667–68 (applying Ohio law, and relying heavily upon the *Restatement* provisions quoted above).

5. Counsel would be well served when relying on foreign unreported decisions, to refer the court to a local rule of the decision's jurisdiction of origin that would permit its citation in that jurisdiction.

itly found that appellant had knowingly and voluntarily waived her constitutional and substantive rights, despite a factual dispute over whether Circuit City had deficiencies in providing the arbitration rules." The facts of the present case are materially indistinguishable from *Meyer v. State Farm Fire & Casualty Co.*, 85 Md.App. 83, 91, 582 A.2d 275 (1990), in which we rejected a virtually identical argument. The issue simply does not merit further discussion. *See also Walther v. Sovereign Bank,* 386 Md. 412, 442–46, 872 A.2d 735 (2005).

## III

The issue presented in the cross-appeal is moot. The circuit court stayed either its order directing the parties to arbitration, under Maryland Rule 2–632, or it stayed the arbitration proceedings under Md.Code (2002 Repl.Vol.), Cts. & Jud. Proc. § 3–208. Under either view, because we hold that the arbitration agreement is enforceable, it is of no consequence whether the circuit court erred in granting appellant's motion for a stay pending appeal. *But see Graphic Communications Union v. Chicago Trib. Co.,* 779 F.2d 13 (7th Cir.1985). Unless there is a further appeal of our disposition herein, the appeal process has concluded, and the parties may proceed to arbitrate their dispute.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**