894 A.2d 547

**La'Tia HOLLOMAN**

v.

**CIRCUIT CITY STORES, INC., et al.**

**No. 53, September Term, 2005.**

Court of Appeals of Maryland.

March 13, 2006.

Brian J. Markovitz (Timothy F. Maloney, Jay P. Holland, Joseph, Greenwald & Laake, P.A., on brief), for petitioner.

Heather A. Mullen (Susan Childers North of Kaufman & Canoles, P.C., Norfolk, VA, Lauri E. Cleary, Jennifer S. Thomas, Lerch, Early & Brewer, Chtd. of Bethesda, Teri C. Miles, Director & Asst. Gen. Counsel, on brief, Richmond, VA), for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

This case presents us with the task of delineating the scope and application of our decision in *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003), to an arbitration agreement between Circuit City Stores, Inc. ("Circuit City") and one of its former employees, La'Tia

Holloman ("Holloman"), which governed all disputes that arose during their employment relationship, in which Circuit City reserved the right to alter or rescind the arbitration agreement on a single day of the year after thirty-days notice of the impending change. Holloman also asks this Court to consider whether she "knowingly and voluntarily" waived her constitutional right to a jury trial and her substantive rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Maryland Code (1957, 2003 Repl.Vol.), Art. 49B, which prohibits discrimination in employment, and the pertinent provisions of the Prince George's County Code when she signed the arbitration agreement. Because we determine that the terms of the arbitration agreement provide consideration, we hold that the arbitration agreement is enforceable under *Cheek*. Moreover, we find that the Court of Special Appeals did not err in concluding that Holloman waived her constitutional right to a jury trial and that Holloman's submission of her statutory claims to arbitration did not deprive Holloman of her rights thereunder. Therefore, we affirm the judgment of the Court of Special Appeals.

## *Background*

In September of 2001, Holloman applied for a job at Circuit City's store in Marlow Heights, Maryland. The first page of her employment application listed several "selection tools" that Circuit City uses to determine which applicants to hire. One such prerequisite to employment was Circuit City's "Dispute Resolution Agreement" ("arbitration agreement"), which was described on the employment application as "requir[ing] you and Circuit City to arbitrate certain legal disputes related to your application for employment or employment with Circuit City." The application then added, "Circuit City will consider your application only if this agreement is signed."

The arbitration agreement contained the following language pertinent to the case *sub judice:*

If you wish to be considered for employment you must read and sign the following agreement. You will be considered as an applicant when you have signed the Agreement.

Included with this application is the Circuit City Dispute Resolution Rules and Procedures. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If the Rules and Procedures are not included in this booklet you must request a copy from a Circuit City representative prior to signing the Agreement. You will note that if you sign at this time you do have three (3) days to withdraw your consent. You may, of course, take the package with you and return with it signed, if you wish to continue your application process.

* * *

[B]oth Circuit City and I agree to settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator. . . .

I understand that if I do file a lawsuit regarding a dispute arising out of or relating to my application or candidacy for employment, employment or cessation of employment, Circuit City may use this Agreement in support of its request to the court to dismiss the lawsuit and require me instead to use arbitration.

* * *

I further agree that if I commence an arbitration, it will be conducted in accordance with the "Circuit City Dispute Resolution Rules and Procedures."

I understand that neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Circuit City and me. I further understand that my signature to this Agreement in no way guarantees that Circuit City will offer me employment. If Circuit City does offer me employment and I become employed at Circuit City, this Agreement in no way alters the "at-will" status of my employment. I understand that my employment, compensation and terms and conditions of employment can be altered or terminated, with or without cause,

and with or without notice, at any time, at the option of either Circuit City or myself.

Holloman initialed the page on which those provisions appear. At the top of the next page, which Holloman signed at the bottom, the arbitration agreement provided:

> The Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures affect your legal rights. By signing this Agreement, you acknowledge receipt of the Dispute Resolution Rules and Procedures. You may wish to seek legal advice before signing this Dispute Resolution Agreement.

* * *

> This Agreement will be enforceable through the application process, my employment, and thereafter with respect to any such claims arising from or relating to my application or candidacy for employment, employment or cessation of employment with Circuit City. We then must arbitrate all such employment-related claims, and we may not file a lawsuit in court.

A Circuit City representative signed the arbitration agreement on the company's behalf.

The nineteen Dispute Resolution Rules and Procedures appear in a separate twelve-page document contained within Circuit City's application packet. Holloman's argument on appeal focuses on Rule 19, which at the time Holloman was hired [1] provided:

> Rule 19. TERMINATION OR MODIFICATION OF DISPUTE RESOLUTION AGREEMENT OR DISPUTE RESOLUTION RULES AND PROCEDURES.

---

1. This Rule was modified in 2003 to change the annual alteration date from December 31 to March 1, with the date by which notice of any modification must be provided changed from December 1 to February 1. Because the changes made in 2003 did not substantively change the provisions at issue in the present case, our analysis is not dependent on a determination of whether the original arbitration agreement or the revised version from 2003 applies to the case *sub judice*.

Circuit City may alter or terminate the Agreement and these Dispute Resolution Rules and Procedures on December 31 of any year upon giving 30 calendar days written notice to Associates, provided that all claims arising before alteration or termination shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures in effect at the time the Arbitration Request Form and accompanying filing fee, or Request for Waiver of Filing Fee is received by the Company. Notice may be given by posting a written notice by December 1 of each year at all Circuit City locations (including locations of affiliated companies). A copy of the text of any modification to the Agreement or Rules and Procedures will be published in the Applicant Packet, which will be available at such locations after December 31 of each year.

Subsequent to her decision to terminate her employment relationship with Circuit City in August of 2002, Holloman filed charges of sexual harassment with the EEOC and received a "right to sue" letter. She then filed a six-count complaint in the Circuit Court for Prince George's County in December of 2003 alleging sexual discrimination, to which Circuit City responded by motion to compel arbitration of Holloman's claims. The Circuit Court granted Circuit City's motion, ordering arbitration and staying the judicial proceedings.

Holloman thereafter initiated arbitration against Circuit City and filed a notice of appeal and a motion to stay the arbitration proceedings pending the appeal, which Circuit City opposed. After a hearing, the Circuit Court granted Holloman's petition for a stay pending appeal.

The Court of Special Appeals, in a reported opinion, held that the notice requirement in Circuit City's arbitration agreement materially distinguished the arbitration agreement at issue from the agreement in *Cheek*, 378 Md. 139, 835 A.2d 656 (2003), because Circuit City's obligation to give Holloman thirty-days notice prior to changing the terms of the arbitration agreement provided consideration for its enforcement and

because it effectively bound Circuit City to its agreement to arbitrate for at least thirty days. *Holloman v. Circuit City Stores Inc.*, 162 Md.App. 332, 338–40, 873 A.2d 1261, 1265 (2005). The Court of Special Appeals also concluded that there was no merit in Holloman's contention that she did not knowingly and voluntarily waive her rights to a jury trial or to relief under the relevant provisions of Title VII of the Civil Rights Act of 1964, the Maryland Code, or the Prince George's County Code.

On June 20, 2005, Holloman filed a petition for writ of certiorari with this Court and presented the following questions for our consideration:

1. Whether the Court of Special Appeals incorrectly created an exception to the holding of the Court of Appeals in *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003)?

2. Whether the Court of Special Appeals incorrectly determined that an applicant can give a knowing and voluntary waiver of his or her constitutional rights and substantive rights under discrimination statutes even when an employer fails to provide the applicant with the arbitration rules, which govern the arbitration agreement?

On August 10, 2005, we granted the petition and issued the writ. *Holloman v. Circuit City, Inc.*, 388 Md. 404, 879 A.2d 1086 (2005). Because we determine that consideration exists to support the arbitration agreement, we hold that the arbitration agreement is enforceable. Moreover, we find that the Court of Special Appeals did not err in concluding that Holloman waived her constitutional right to a trial by jury and that the arbitration procedure in the case at bar did not infringe on Holloman's substantive rights under federal, state, or local discrimination statutes. Therefore, we affirm the judgment of the Court of Special Appeals.[2]

---

**2.** There are only two issues before this Court in the case *sub judice:* the application of the illusory promise analysis from *Cheek v. United Healthcare of the Mid–Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003), and whether Ms. Holloman waived her right to a jury trial through the

### Standard of Review

"A trial court's order to compel arbitration constitutes a final and appealable judgment." *Walther v. Sovereign Bank,* 386 Md. 412, 422, 872 A.2d 735, 741 (2005), citing *Horsey v. Horsey,* 329 Md. 392, 403, 620 A.2d 305, 311 (1993) (stating that "an order compelling the parties before the trial court to submit their dispute to arbitration, thereby denying all relief sought in the trial court and terminating the action there, is a final appealable judgment"). Our focus in reviewing the trial court's order to compel arbitration " 'extends only to a determination of the existence of an arbitration agreement.' " *Walther,* 386 Md. at 422, 872 A.2d at 741, quoting *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 645, 824 A.2d 87, 95 (2003). The trial court's decision as to whether a "particular dispute is subject to arbitration is a conclusion of law, which we review *de novo." Walther,* 386 Md. at 422, 872 A.2d at 741, citing *Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 250, 768 A.2d 620, 629–30 (2001).

### Discussion

Holloman argues that the arbitration agreement is invalid on its face because Circuit City reserved the right to unilaterally terminate and modify its terms without the employee's consent, which renders the promise to arbitrate illusory. Moreover, she asserts that the appropriate concern with respect to arbitration agreements is not whether the employee was notified of the change or that the changes can be made only within a limited time period, but, rather whether the employee's consent was required before the changes became effective. Holloman contends that because Circuit City possessed the power to alter or rescind the arbitration agreement, the agreement was not supported by consideration. In this respect, Holloman argues that the case at bar is identical

---

arbitration agreement. Despite the dissent's efforts to interject the issues of adhesion and unconscionability into this case, adhesion and unconscionability are not properly before us as Ms. Holloman did not raise them in her petition to this Court nor at any other point in the course of this litigation.

to the situation presented to this Court in *Cheek*, which mandates that the agreement be found unenforceable.

Holloman also asserts that because Circuit City did not provide her with a copy of the arbitration rules, she did not make a knowing and intelligent waiver of her constitutional right to a jury trial or her substantive rights under Title VII of the Civil Rights Act of 1964, Maryland Code (1957, 2003 Repl.Vol.), Article 49B, which governs discrimination in employment, and the Prince George's County Code.

Conversely, Circuit City argues that the trial court and the Court of Special Appeals correctly held that the arbitration agreement between Circuit City and Holloman was enforceable. According to Circuit City, the limited modification provision in the arbitration agreement did not render the company's promise to arbitrate non-binding. Thus, Circuit City states that its obligation to arbitrate constitutes consideration for the agreement. Furthermore, Circuit City contends that Holloman is bound by the arbitration agreement through her signature on the document, regardless of whether she read its terms. Circuit City also asserts that its rules governing arbitration are procedural in nature and cannot be construed as waiving any substantive rights. According to Circuit City, Holloman's remedial rights under Title VII of the Civil Rights Act of 1964, Maryland Code (1957, 2003 Repl. Vol), Article 49B, or the Prince George's County Code are not infringed through the use of binding arbitration.

Arbitration in Maryland is governed by the Maryland Uniform Arbitration Act ("MAA"), Maryland Code (1974, 2002 Repl.Vol.), Section 3–201 through 3–234 of the Courts and Judicial Proceedings Article, which was "purposefully meant to mirror the language of [the Federal Arbitration Act, 9 U.S.C. §§ 1–14 (2000) ]." *Walther*, 386 Md. at 423–24, 872 A.2d at 742. As we stated in *Holmes v. Coverall North America, Inc.*, 336 Md. 534, 541, 649 A.2d 365, 368 (1994):

> The Maryland Arbitration Act has been called the "State analogue ... to the Federal Arbitration Act." *See Regina v. Envirmech*, 80 Md.App. 662, 667, 565 A.2d 693, 696 (1989).

The same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts. We have previously described arbitration as "the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them." *Walther,* 386 Md. at 424, 872 A.2d at 743, quoting *Cheek,* 378 Md. at 146, 835 A.2d at 660, quoting in turn *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983).

The issue of whether an agreement to arbitrate exists is governed by contract principles. *Walther,* 386 Md. at 425, 872 A.2d at 743, quoting *Cheek,* 378 Md. at 147, 835 A.2d at 661; *see also Curtis G. Testerman Co. v. Buck,* 340 Md. 569, 579, 667 A.2d 649, 654 (1995) (recognizing that "[a]rbitration is 'consensual; a creature of contract' " and that " '[i]n the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process.' "), quoting Thomas J. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions,* 72 Iowa L.Rev. 473, 476–77 (1987) (citations omitted). In most instances, the determination of a contract's enforceability is decided by the existence of consideration, *Cheek,* 378 Md. at 147, 835 A.2d at 661; *Harford County v. Town of Bel Air,* 348 Md. 363, 381, 704 A.2d 421, 430 (1998); *Chernick v. Chernick,* 327 Md. 470, 479, 610 A.2d 770, 774 (1992); *Peer v. First Federal Savings and Loan Assoc. of Cumberland,* 273 Md. 610, 614, 331 A.2d 299, 301 (1975); *Broaddus v. First Nat'l Bank,* 161 Md. 116, 121, 155 A. 309, 311 (1931), which may be established through evidence of " 'a benefit to the promisor or a detriment to the promisee.' " *Harford County,* 348 Md. at 382, 704 A.2d at 430, quoting *Vogelhut v. Kandel,* 308 Md. 183, 191, 517 A.2d 1092, 1096 (1986).

We have recognized that a binding promise may serve as consideration for another promise. *Cheek,* 378 Md. at 148, 835 A.2d at 661. Unless the obligation is binding, however, the requisite consideration does not exist to support a legally enforceable agreement and it is considered illusory.

*Id.; Tyler v. Capitol Indemnity Ins. Co.*, 206 Md. 129, 134, 110 A.2d 528, 530 (1955) (observing that "[i]f [an] option goes so far as to render illusory the promise of the party given the option, there is indeed no sufficient consideration, and therefore no contract ...."). We have previously described an "illusory promise" as "appear[ing] to be a promise, but ... not actually bind[ing] or obligat[ing] the promisor to anything." *Cheek*, 378 Md. at 148, 835 A.2d at 662. An illusory promise does not constitute consideration to enforce a contract. *Id.*

Holloman argues that because Circuit City reserved the ability to modify the arbitration agreement without her consent, the agreement is unenforceable for lack of consideration. To this end, she relies upon our holding in *Cheek*, 378 Md. 139, 835 A.2d 656.

In *Cheek*, Ronnie Cheek, the employee, entered into an arbitration agreement with United Healthcare, his employer, which provided the following reservation of rights:

United Healthcare reserves the right to alter, amend, modify, or revoke the Policy at its sole and absolute discretion at any time with or without notice. The senior executive of Human Resources has the sole authority to alter, amend, modify, or revoke the Policy.

*Cheek*, 378 Md. at 142–43, 835 A.2d at 658. We determined that because United retained the right to " 'alter, amend, modify, or revoke the [Employment Arbitration] Policy at its sole and absolute discretion at *any time with or without notice* ' and without consent," and as such was not bound by the arbitration agreement, United Healthcare's promise was illusory and the agreement was unenforceable for lack of consideration. *Id.* at 149, 161, 835 A.2d at 663, 669 (emphasis added). In so holding, we aligned ourselves with courts from other jurisdictions that also have concluded that similar language was unenforceable for lack of consideration. *See Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir.2002) (stating that because American Golf had the ability to alter the arbitration provisions at any time, the promise to arbitrate was rendered illusory); *Penn v. Ryan's Family*

*Steak Houses, Inc.,* 269 F.3d 753, 759–60 (7th Cir.2001) (construing a similar agreement where a party had the sole, unilateral right to amend the arbitration rules; holding that this rendered the promise to arbitrate illusory); *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 315–16 (6th Cir.2000) (holding that the arbitration agreement at issue was unenforceable because it permitted one party to alter the applicable rules without notification or consent of the other parties, thereby lacking consideration).

Holloman asserts that in our opinion in *Cheek,* we held that "notice does not provide consideration in Maryland." On the contrary, our reasoning in *Cheek* indicates that the arbitration agreement at issue in that case was unenforceable because United Healthcare was not bound to arbitrate and could "opt out" of the arbitration process at anytime, even after the process was initiated-or even completed. *See Cheek,* 378 Md. at 150–51, 835 A.2d at 663 (noting that the agreement was unenforceable because United Healthcare had the right to alter or revoke the agreement at any time with or without notice and without consent). United Healthcare's purported promise to arbitrate was illusory because it "creat[ed] no real promise" as it allowed United to revoke the Employment Arbitration Policy even after arbitration is invoked, and even after a decision is rendered, because United can "revoke" the Policy "at any time." *Id.* at 149, 835 A.2d at 662. Thus, we concluded that United's promise to arbitrate was illusory and was not consideration to support the enforcement of the arbitration agreement. *Id.*

Unlike United Healthcare in *Cheek,* Circuit City does not have unfettered discretion to alter or rescind the arbitration agreement without notice or consent. Rather, under the terms of the agreement, Circuit City is bound to the terms of the arbitration agreement for 364 days, must provide thirty-days notice prior to any modification and may only alter the agreement on a single day out of the year to become effective during the next day. Holloman, under these terms, could have the opportunity to arbitrate any "grievance" with Circuit City under the terms explicated during the 30–day window

without fear of recission or alteration by Circuit City. We find these limitations to be adequate to create a binding obligation on Circuit City to submit to arbitration, such that Circuit City's promise to arbitrate under the arbitration agreement constitutes consideration, and the agreement is enforceable. *Cheek*, 378 Md. at 153–54, 835 A.2d at 665 ("[M]utual promises to arbitrate act as an independently enforceable contract . . . each party has promised to arbitrate disputes arising from an underlying contract, and 'each promise provides consideration for the other.' ").

Our conclusion is consistent with courts in other jurisdictions that have addressed the enforceability of the same provision of Circuit City's arbitration agreement. In *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir.2003), the United States Court of Appeals for the Sixth Circuit determined that the limitations imposed by Circuit City's arbitration agreement constituted consideration to create an enforceable contract because they created a binding promise. According to the court, "Circuit City's promise to maintain the arbitration agreement for at least thirty days, and until the end of each calendar year, constitutes . . . consideration." *Id.* at 668. Similarly, in *Johnson v. Circuit City*, 148 F.3d 373 (4th Cir.1998), the United States Court of Appeals for the Fourth Circuit, addressing the application of the arbitration agreement at issue in the case *sub judice*, also determined that the terms of the arbitration agreement evidenced a promise by Circuit City to arbitrate, which provided consideration for the enforceability of the agreement. *Id.* at 378–79.

The cases to which Holloman cites do not support her position. She relies on *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582 (D.S.C.1998), *aff'd*, 173 F.3d 933 (4th Cir. 1999), in which the parties' arbitration agreement provided: "These Rules and Procedures may be modified, in whole or in part, by the Company from time to time, without notice," and "the Company may cancel the Agreement and Procedure on 30 days written notice." *Id.* at 617. Based on Hooters' ability to alter the agreement at any time without notice, the Fourth Circuit found that "Hooters retained to itself an unfettered

'right to decide later the nature or extent of [its] performance' by reserving the authority to modify the Rules, or terminate the agreement, at its choice." *Id.* at 618. The unfettered ability to modify the agreement in *Hooters*, similar to that which was present in *Cheek*, distinguishes it from the present case.

Holloman also emphasizes the United States Court of Appeals for the Ninth Circuit's reasoning in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir.2003). That case, however, focused on whether the arbitration agreement was substantively unconscionable because its employees had no power to negotiate the terms of the agreement or any modification made subsequent to their hiring. The Ninth Circuit specifically included language which stated that the court's opinion did not address whether the notice provision and power to modify the terms of the arbitration agreement contained in the arbitration agreement rendered the agreement unenforceable:

> Our holding with regard to the provision granting Circuit City the unilateral authority to modify or terminate the arbitration agreement does not collide with that of the Sixth Circuit in *Morrison*, 317 F.3d at 667–68. The court in *Morrison* held that Circuit City's ability to modify or terminate the arbitration agreement did not, by itself, render the contract unenforceable. In this case, we hold that the provision is substantively unconscionable. We draw no conclusion as to whether this term, by itself, renders the contract unenforceable.

*Id.* at 1179 n. 23. Therefore, the Ninth Circuit's reasoning in *Ingle* is not applicable.[3]

---

**3.** The remainder of the cases cited by Holloman are inapposite for similar reasons. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir.2005) (enforcing the arbitration agreement where *neither* party had the power to alter or rescind the agreement); *Al–Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254 (9th Cir.2005) (finding that the arbitration clause is unconscionable under Washington law and not addressing the issue of whether the agreement was otherwise enforceable). Holloman also cites to *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir.2003), in which the United States Court of Appeals for the Sixth Circuit relied on its reasoning in *Morrison* to hold that the arbitration agreement at issue

Therefore, we conclude that the provisions of the arbitration agreement which bind Circuit City to arbitrate for at least thirty days and for the entire year prior to the day upon which the agreement may be modified constitute consideration. Thus, the arbitration agreement between Holloman and Circuit City is enforceable.

■ Holloman also argues that she did not knowingly and voluntarily waive her constitutional right to a jury trial or her substantive rights under Title VII of the Civil Rights Act of 1964, Maryland Code (1957, 2003 Repl.Vol.), Article 49B, governing discrimination in employment settings, and the Prince George's County Code. We, however, disagree.

■ At the outset, we note that under Maryland law, a party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution. *See Walther,* 386 Md. at 444, 872 A.2d at 754 ("If petitioners did not [read the agreement] before they signed the agreement, they have no person to blame but themselves. As expressed earlier in our discussion, we are loath to rescind a conspicuous agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement."); *Binder v. Benson,* 225 Md. 456, 461, 171 A.2d 248, 250 (1961) ("[T]he usual rule is that if there is no fraud, duress or mutual mistake, one who has the capacity to understand a written document who reads and signs it, or without reading it or having it read to him, signs it, is bound by his signature as to all of its terms.") (citations omitted); *McGrath v. Peterson,* 127 Md. 412, 416, 96 A. 551, 553 (1916) ("It would lead to startling results if a person who executes, *without coercion or undue persuasion,* a solemn release under seal, can subsequently impeach it on the ground of his own carelessness, though at the very time of its execution, he might, had he seen fit, had advised himself fully as to the nature and legal effect of the act he was doing") (emphasis in original).

was enforceable. Thus, *Fazio* does not sustain Holloman's assertion that the arbitration agreement in the present case is not supported by consideration.

Holloman's assertion that she did not waive her right to a jury trial under the arbitration agreement is without merit. In *Walther*, we addressed identical arguments with respect to an arbitration clause between an employee and his employer. We stated that "[b]ecause the right to a jury trial 'attaches in the context of judicial proceedings after it is determined that litigation should proceed before a court ... the "loss of the right to a jury trial *is a necessary and fairly obvious consequence* of an agreement to arbitrate." ' " *Walther*, 386 Md. at 443, 872 A.2d at 754 (emphasis in original), quoting *Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302, 307 (4th Cir.2001), quoting in turn *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984). Thus, we concluded that "the loss of one's right to a jury trial is *generally implicit* in an agreement to arbitrate." *Id.* In the present case, Holloman initialed and signed the arbitration agreement, which specifically stated that the agreement bound her to the arbitration process as opposed to litigation in court, that Circuit City could use the arbitration agreement to compel arbitration if she filed suit in court, and, in bold font, that the agreement affected her legal rights. Moreover, Holloman had three days within which to withdraw her consent to arbitration. Because the clear language of the arbitration agreement indicates that the arbitration agreement forecloses Holloman's access to the courts, and Holloman was provided the opportunity to consult an attorney and withdraw her consent, we hold that the waiver of her right to a jury trial is effective.

 Holloman also argues that her rights under Title VII of the Civil Rights Act of 1964, Maryland law, and the Prince George's County Code will be detrimentally affected if she is required to arbitrate her claims. Numerous jurisdictions have recognized that arbitration of statutory claims does not result in the forfeiture of substantive statutory rights. In *Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301–02 (4th Cir.2002), the United States Court of Appeals for the Fourth Circuit stated:

[i]t is settled that the provisions of the FAA, and its policy favoring the resolution of disputes through arbitration, ap-

ply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 937 (4th Cir.1999). Such an agreement is enforceable because " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.' " *Hooters,* 173 F.3d at 937.... If "the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the claim is appropriately subjected to arbitration in lieu of litigation." *Green Tree,* 531 U.S. at 89, 121 S.Ct. 513, 148 L.Ed.2d 373. *See also Morrison,* 317 F.3d at 665 (noting that "Title VII claims may be heard in an arbitral forum"); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 309 (6th Cir.1991).

Holloman relies on Justice Black's dissenting opinion in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), for the proposition that arbitration does not provide an adequate forum for her to seek redress. In his dissenting opinion in *Maddox,* Justice Black decried the deficiencies of the arbitration process as compared to a trial by jury. *Id.* at 664, 85 S.Ct. at 623, 13 L.Ed.2d at 590. The majority in *Maddox,* however, held that the collective bargaining agreement that specified that arbitration was the exclusive remedy was applicable to the employee's action for severance pay. *Id.* at 656, 85 S.Ct. at 618, 13 L.Ed.2d at 588. The majority's holding in *Maddox* is consistent with the Supreme Court's recent recognition of "liberal federal policy favoring arbitration agreements," which, it noted, "requires that we rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625–26, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444, —— (1985), quoting *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Green Tree Fin. Corp.—Alabama v. Randolph,* 531 U.S. 79, 89, 121 S.Ct. 513, 148 L.Ed.2d 373, ——

(2000) (stating that the Federal Arbitration Act was adopted to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements on the same footing as other contracts"); *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158, —— (1985).

The language of the arbitration agreement specifically lists claims cognizable under Title VII of the Civil Rights Act of 1964 as well as state and local statutory claims as subject to arbitration. This provision is clearly written, and Holloman initialed and signed the document acknowledging her agreement to arbitrate such claims. Holloman has not presented any evidence of fraud, duress, or undue influence with respect to her signature acknowledging receipt of the Dispute Resolution Rules and Procedures and her agreement to submit her statutory claims to arbitration. Therefore, because the terms of the arbitration agreement plainly stated that federal, state, and local statutory claims are subject to arbitration and Holloman signed the agreement, she is bound to arbitrate her claims as arbitration has been recognized as sufficient to protect her rights at issue.

### Conclusion

Because we determine that the terms of Circuit City's arbitration agreement at issue here provide consideration, we hold that the arbitration agreement is enforceable. Moreover, we find that the lower courts did not err in concluding that Holloman waived her constitutional right to a jury trial and that submitting Holloman's statutory discrimination claims to arbitration did not impinge on her substantive rights. Therefore, we affirm the judgment of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

BELL, C.J., and GREENE, J., Dissent.

Dissenting Opinion by BELL, C.J. which GREENE, J., joins.

I dissent, and emphatically so.

To be sure, and clearly, La'Tia Y. Holloman, the petitioner, submitted an Employment Application with Circuit City seeking a sales associate position. The Employment Application listed "a number of selection tools," number 2. of which was:

*"Dispute Resolution Agreement*—This agreement requires you and Circuit City to arbitrate certain legal disputes related to your application for employment or employment with Circuit City. Circuit City will consider your application only if this agreement is signed."

It also included the "Circuit City Dispute Resolution Agreement," [1] which the petitioner initialed and signed. By signing the Dispute Resolution Agreement and not withdrawing within three days, the petitioner "recognized" that she would "be required to arbitrate, as explained [earlier in the agreement] employment-related claims which I may have against Circuit City, whether or not I become employed by Circuit City." A representative of Circuit City, its Senior Vice President for Human Resources, signed the Employment Application, containing the Dispute Resolution Agreement, on its behalf.[2]

---

**1.** The agreement repeated what the selection tool 2. said: "If you wish to be considered for employment you must read and sign the following agreement." After adding what was necessarily implicit, "[y]ou will be considered as an applicant when you have signed the Agreement, provided:

"Included with this application is the Circuit City Dispute Resolution Rules and Procedures. You should familiarize yourself with these rules and procedures prior to signing the Agreement. If the Rules and Procedures are not included In this booklet you must request a copy from a Circuit City representative prior to signing the Agreement. You will note that If you sign at this time you do have three (3) days to withdraw your consent. You may, of course, take the package with you and return with it signed, if you wish to continue your application process."

**2.** This is in contrast to what the dissenting judge in *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637-639 (7th Cir.1999) (Rovner, J., dissenting), determined to be the situation in that case. There Circuit City did not sign the Employment Application, the Dispute Resolution

Circuit City's undertaking under the agreement was "to consider this Employment Application and to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above."

> Substantively, the Dispute Resolution Agreement provided: "Except as set forth below, both Circuit City and I agree to settle any and all previously unasserted claims, disputes or controversies arising out or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, exclusively by final and binding arbitration before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family Medical Leave Act, the law of contract and law of tort."

Notwithstanding this provision, the last paragraph of the agreement stated:

> "1 understand that neither this Agreement nor the Dispute Resolution Rules and Procedures form a contract of employment between Circuit City and me. I further understand that my signature to this Agreement in no way guarantees that Circuit City will offer me employment. If Circuit City does offer me employment and I become employed at Circuit City, this Agreement in no way alters the 'at-will' status of my employment. I understand that my employment, compensation and terms and conditions of employ-

---

Agreement or the Rules and Procedures, relying on its employee handbook to indicate its agreement to arbitrate disputes. In *Johnson v. Circuit City Stores, Inc.*, 148 F.3d 373, 375 (4th Cir.1998), however, as in this case, both the applicant for employment and Circuit City signed a dispute resolution agreement providing that "Circuit City agrees to follow this Dispute Resolution Agreement and the Dispute Resolution Rules and Procedures in connection with the Associate whose signature appears above".

ment can be altered or terminated, with or without cause, and with or without notice at anytime, at the option of either Circuit City or myself. I understand that no store manager or representative of Circuit City, other than an Officer of Circuit City at the level of Vice President or above, has any authority to enter into any agreement for employment for any specific duration, to make any agreement contrary to the foregoing or to alter the Circuit City Dispute Resolution Rules and Procedures."

Rule 2 of the Circuit City Dispute Resolution Rules and Procedures further amplify and identify the "Claims Subject To Arbitration." It provided:

"Except as otherwise limited herein, any and all employment-related legal disputes, controversies or claims arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment with Circuit City or one of its affiliates shall be settled exclusively by final and binding arbitration before a neutral, third-party Arbitrator selected in accordance with these Dispute Resolution Rules and Procedures. Arbitration shall apply to any and all such disputes, controversies or claims whether asserted against the Company and/or against any employee, officer, alleged agent, director or affiliate company.

"All previously unasserted claims arising under federal, state or local statutory or common law shall be subject to arbitration. Merely by way of example, these claims include, but are not limited to, claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act (ADA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, as amended, including the amendments of the Civil Rights Act of 1991, the Employee Polygraph Protection Act, the Employee Retirement Income Security Act (ERISA), state discrimination statutes, state statutes and/or common law regulating employment termination, the law of contract or the law of tort; includ-

ing, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, and intentional/negligent infliction of emotional distress or defamation. Statutory or common law claims alleging that Circuit City retaliated or discriminated against an Associate shall be subject to arbitration."

Rule 19, dealing with termination or modification of the dispute resolution agreement or the rules and procedures pursuant thereto, permits Circuit City to "alter or terminate the Agreement and these Dispute Resolution Rules and Regulations on March 1st of any year upon giving 30 days written notice to" the sales associates. It provides further that the agreement and rules and procedures in effect "at the time the Arbitration Request Form and Accompanying filing fee, or Request for Waiver of Filing Fee is received by the Company" will govern that claim.

The agreement at issue in this case, consisting of the Employment Agreement, the Circuit City Dispute Resolution Agreement and the Circuit City Dispute Resolution Rules and Procedures, is, without any doubt, is a contract of adhesion. A contract of adhesion, it is well settled, is one, usually prepared in printed form, "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." Restatement (Second) of Conflict of Laws §§ 187, Comment b. *See Meyer v. State Farm Fire and Cas. Co.*, 85 Md.App. 83, 89, 582 A.2d 275, 278 (1990); *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal.4th 83, 99 Cal. Rptr.2d 745, 6 P.3d 669, 689 (2000), *quoting Neal v. State Farm Ins. Companies*, 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781 (1961) (contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it"); *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989, 995 (1999), *quoting Passage v. Prudential–Bache Securities, Inc.*, 223 Mont. 60, 727 P.2d 1298, 1301 (1986) ("contracts of adhesion 'arise when a standardized form of agreement, usually drafted

by the party having the superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms' "); *Lackey v. Green Tree Financial Corp.*, 330 S.C. 388, 498 S.E.2d 898, 901 (1998).

It is also unconscionable. "[U]nconscionability has both a 'procedural' and a 'substantive' element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690, *quoting A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486–487, 186 Cal.Rptr. 114, 121–122 (1982). "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690, *quoting Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th at 1533, 60 Cal.Rptr.2d 138.

This is a preemployment arbitration contract. In such cases, it has been recognized that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690. Thus, although, even in the ordinary case, "when a party who enjoys greater bargaining power than another party presents the weaker party with a contract without a meaningful opportunity to negotiate, 'oppression and, therefore, procedural unconscionability, are present,'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir.2003), *quoting Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 784 (9th Cir.2002); *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100, 118 Cal.Rptr.2d 862, 867 (2002), that, in other words, contracts of adhesion are procedurally unconscionable. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir.2002) ("The [arbitration agreement] is procedural-

ly unconscionable because it is a contract of adhesion."); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376, 382 (2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability"); *Acorn v. Household Int'l, Inc.*, 211 F.Supp.2d 1160, 1168 (N.D.Cal.2002), the unconscionability is more pronounced and, therefore, more acute in such cases.

The agreement also is substantively unconscionable—the terms of the agreement, on which this inquiry must focus, are so one-sided as to shock the conscience of this member of the Court and, I submit, ought to shock the conscience of the entire Court. While ostensibly agreeing to be bound by the Dispute Resolution Agreement, Circuit City quickly extricated itself from that agreement by a subsequent provision that makes clear that the petitioner's agreement to be bound by the Dispute Resolution Agreement had no effect on it, for the simple reason that, by virtue of that provision, it, in fact, did not agree to be bound to do anything. By the last paragraph of the Circuit City Dispute Resolution Agreement, no contract of employment was formed, it did not agree to offer the applicant employment and, even if it offered the applicant employment and the applicant accepted, the applicant remained an at-will employee, with Circuit City retaining the right to alter or terminate the applicant's employment, compensation and terms and conditions of employment, "with or without cause, and with or without notice, at any time." [3] That leaves absolutely no issue about which Circuit City has an interest or need to arbitrate. The only effect of this agreement is to require the petitioner to arbitrate. The only meaningful obligation Circuit City has with regard to arbitra-

---

3. To be sure, the phrase, "at the option of either Circuit City or myself," is inserted at the end of the sentence. It is nonsense to suggest that this provision is mutually for the benefit of the petitioner and Circuit City. While the petitioner may quit her job, an option she has in any event unless she enters into a contract for a term, only Circuit City may alter the terms and conditions of employment or the compensation for that employment.

tion is to appear and defend any arbitration proceeding the petitioner may bring.

That this is so is buttressed both by the agreement itself and the Rules and Procedures implementing it. As we have seen, the Dispute Resolution Agreement refers to "controversies arising out of or relating to my application or candidacy for employment and/or cessation of employment with Circuit City." More expansively, the Rules and Procedures repeat that the claims covered are "any and all employment-related legal disputes, controversies or claims arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment" and make clear that those controversies are "unasserted claims arising under federal, state or local statutory or common law" and give examples of what is meant. It is significant, I think, that all of the examples relate to and involve claims that an employee, not an employer, would have or want to bring. Indeed, even those claims not subject to arbitration, which the agreement mentions, are those that necessarily would be made by "Associates."[4] That is not surprising, given the rights Circuit City retained.

The court in *Ingle,* 328 F.3d at 1173–74 (footnotes omitted), considered the identical rule as in this case and found, on that basis, that the arbitration agreement was so one-sided as not to be enforceable. It reasoned:

"Circuit City's arbitration agreement applies only to 'any and all employment-related legal disputes, controversies or claims of an Associate,' thereby limiting its coverage to claims brought by employees. By the terms of this agreement, Circuit City does not agree to submit to arbitration claims it might hypothetically bring against employees.

---

4. "Claims by Associates for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act shall not be subject to arbitration. Statutory or common law claims alleging that Circuit City retaliated or discriminated against an Associate for filing a state employment insurance claim, however, shall be subject to arbitration."

Without a reasonable justification for such a glaring disparity based on 'business realities,' 'it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee.' *Armendariz,* 24 Cal.4th at 117, 99 Cal. Rptr.2d 745, 6 P.3d at 692; *see* Cal. Civ.Code §§ 1670.5(b). Therefore, as we held in *Adams III,*[5] this 'unjustified onesidedness deprives the [arbitration agreement] of the "modicum of bilaterality" that the California Supreme Court requires for contracts to be enforceable under California law.' *Adams III,* 279 F.3d at 894; *Armendariz,* 24 Cal.4th at 117, 99 Cal.Rptr.2d 745, 6 P.3d at 692.

"This case presents a broad concern with respect to arbitration agreements between employers and employees. Circuit City argues that the arbitration agreement subjects Circuit City to the same terms that apply to its employees. But this argument is 'exceedingly disingenuous,' because the agreement is one-sided anyway. Because the possibility that Circuit City would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes.

"The only claims realistically affected by an arbitration agreement between an employer and an employee are those claims employees bring against their employers. By essentially covering only claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided even without the express limitation to claims brought by employees."

I am also troubled by the majority's resolution of the waiver of jury trial issue. There is a dispute concerning whether the petitioner received a copy of the Circuit City Dispute Resolution Rules and Procedures. I do not imagine that anyone

---

5. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889 (9th Cir.2002)

could think that a failure to provide the petitioner with the Rules and Procedures which will govern her decision to agree to arbitration is not relevant to the issue of whether the petitioner waived her jury trial right. So far as the record reflects, however, that disputed issue was not resolved by taking testimony, rather it was decided on Circuit City's motion to compel arbitration, without the taking of any evidence. A motion to compel arbitration tests whether there is an agreement to arbitrate. When there is a dispute of fact in that regard, the court must resolve that dispute preliminary to disposing of the motion. When there is a factual dispute, the motion to compel is akin to a motion to dismiss. With respect to such motions, the well pleaded facts in the complaint are taken as true. That, in my opinion should have been done in this case and the movant required to prove the existence of the agreement, including that the petitioner received the rules and procedures as that is, to my mind critical to the finding of a valid and binding agreement to arbitrate.

I share the opinion expressed by the Supreme Court of California:

> "Given the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement. 'Private arbitration may resolve disputes faster and cheaper than judicial proceedings. Private arbitration, however, may also become an instrument of injustice imposed on a "take it or leave it" basis. The courts must distinguish the former from the latter, to ensure that private arbitration systems resolve disputes not only with speed and economy but also with fairness.' "

*Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 690–91, *quoting Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997) (Kennard, J., concurring).

Judge GREENE joins in this dissenting opinion.