*Willie Mae Ford, et al. v. Antwerpen Motorcars Ltd., et al.*, No. 68, September Term 2014, Opinion by Greene, J.

**CODE OF MARYLAND REGULATIONS ("COMAR") 11.12.01.15A — VEHICLE SALES CONTRACT**

COMAR 11.12.01.15A provides that "[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties." The adoption of this regulation has not supplanted our longstanding common law contract principles permitting the construction or reading of multiple documents together to comprise the entire agreement between the parties. *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004); *Rocks v. Brosius*, 241 Md. 612, 637, 217 A.2d 531, 545 (1966). The two documents before this Court, the Buyer's Order and the Retail Installment Sales Contract ("RISC"), reviewed and signed by Petitioners on the same day during the purchase and finance of a vehicle, indicate an intention that the documents be construed together as part of the same transaction, i.e., the purchase and finance of an automobile. Thus, the arbitration clause in the Buyer's Order controls a dispute over an alleged breach of the RISC.

Circuit Court for Baltimore City
Case No. 24-C-13-002548
Argued: April 1, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 68
September Term, 2014

WILLIE MAE FORD, *et al.*

v.

ANTWERPEN MOTORCARS LTD., *et al.*

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
**Watts,

JJ.

Opinion by Greene, J.
Battaglia and McDonald, JJ., concur in the judgment.

Filed: June 29, 2015

*Harrell, J., participated in the hearing of the case, in the conference in regard to its decision and in the adoption of the opinion but he retired from the Court prior to the filing of the opinion.

**Watts, J., participated in the hearing of this case but recused herself prior to conferencing and adoption of this opinion.

In the instant case we are asked to consider the extent to which multiple documents executed on the same day during the course of the purchase and financing of an automobile may be read together as constituting the entire agreement between the parties. In particular, we address whether the Code of Maryland Regulations ("COMAR") 11.12.01.15A,[1] which Petitioners have referred to as the "Single Document Rule,"[2] prevents an automobile dealer from relying on an arbitration provision found in a Buyer's Order,[3] but not explicitly within the four corners of the Retail Installment Sales Contract ("RISC"). We conclude that COMAR 11.12.01.15A does not, as Petitioners suggest, displace our common law contract principles permitting multiple documents from being construed together as evincing the entire agreement of the parties. *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004); *Rocks v. Brosius*, 241 Md. 612, 637, 217 A.2d 531, 545 (1966).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Petitioners', Willie Mae Ford and Rashad Earle Beale, purchase

---

[1] Under COMAR 11.12.01.15A "[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties."

[2] Although Petitioners refer to COMAR 11.12.01.15A as the "Single Document Rule," we have not been provided with, nor are we aware of, any Maryland judicial opinion on point or other persuasive authority using this label.

[3] The Buyer's Order form sets forth, among other things, the parties to the vehicle sale, the identity of the vehicle purchased, its purchase price, any down payment or trade-in value credited towards the vehicle's price, and the balance owed to the automobile dealership upon delivery.

and finance of an automobile from Respondent, Antwerpen Motorcars Ltd. ("Antwerpen"), on April 24, 2010. Petitioners aver that Antwerpen failed to properly disclose the vehicle's history, including its involvement in a collision and use as a short-term rental. The gravamen of Petitioners' dispute before this Court concerns not the vehicle's history, but rather the existence, or lack thereof, of an agreement to arbitrate disputes under the terms of the vehicle sales contract. In determining whether Petitioners' claims against Antwerpen are subject to a mandatory arbitration provision, we consider two documents executed by the parties during the transaction. On the same day, Petitioners executed both a Buyer's Order—which sets forth the purchase price—and a Retail Installment Sales Contract ("RISC")—which contains the financing terms of the purchase.

In relevant part, the Buyer's Order provides:

### AGREEMENT TO ARBITRATE DISPUTES

Buyer(s) (also referred to as "You") and Dealer agree that if any Dispute arises, the Dispute will be resolved by binding arbitration[.]

* * * *

A Dispute is any question as to whether something must be mediated and the terms and procedures of the mediation, as well as any allegation concerning a violation of a sales state or federal statute that may be subject of mediation, any monetary claim whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, or any retail installment sale contract or lease (but this mediation agreement does not apply to and shall not be binding on any assignee thereof).

* * * *

The parties understand that they are waiving their rights to jury a trial and class consideration of all claims and disputes between them not specifically exempted from arbitration in this Agreement.

The front and back of this buyer's order, along with other documents signed by You in connection with this order, comprise the entire agreement between the parties affecting this purchase.

Petitioners' signatures appear directly below the language contained in the Agreement to Arbitrate.

The RISC, which sets forth the terms of the financing agreement between Petitioners and Antwerpen, does not include an agreement to arbitrate. Specifically, the RISC provides that "You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." Following the various financing terms contained in the agreement, the RISC provides, in relevant part, that "**[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement** between you and us affecting this purchase." (Emphasis added). Petitioners' signatures are located two sentences after this provision. The RISC further provides that it is governed by the Creditor Grantor Closed End Credit Provisions ("CLEC"), Md. Code (1975, 2013 Repl. Vol., 2014 Supp.), § 12-1001 *et seq.* of the Commercial Law Article ("Com. Law").

Petitioners filed their Complaint in the Circuit Court for Baltimore City on April 29, 2013, after discovering the vehicle's alleged incident history. In their Complaint, Petitioners

3

asserted the following causes of action against Antwerpen: Breach of Implied Warranty of Merchantability (Count I); violation of the Maryland Consumer Protection Act (Count II); Deceit by Non-Disclosure or Concealment of Prior Rental and Accident (Counts III-IV); Negligent Misrepresentation (Count V); and Contract (Count VI). Antwerpen moved to compel arbitration on the basis of the Agreement to Arbitrate contained in the Buyer's Order. Petitioners opposed Antwerpen's motion on the grounds that the language of the Buyer's Order was superseded by the RISC, which contained no arbitration agreement. Following a hearing on Antwerpen's motion on October 21, 2013, the Circuit Court entered an order granting Antwerpen's Motion to Compel Arbitration.

On November 18, 2013, Petitioners appealed to the Court of Special Appeals seeking a reversal of the judgment entered in the Circuit Court. Prior to any proceedings in the Court of Special Appeals, we granted Petitioners' *certiorari* petition, *Ford v. Antwerpen Motorcars Ltd*, 440 Md. 114, 99 A.3d 778 (2014), to consider the following question:

> (1) Under Maryland contract law, is an arbitration provision not contained in a vehicle sales contract, but found in a Buyer's Order executed on the same day, enforceable where the applicable Maryland regulations require vehicle sales contracts to "contain[] all agreements of the parties"?

As explained in greater detail below, we shall answer that question in the affirmative and hold that, for the purposes of the instant case, the Buyer's Order may be construed together with the RISC as evincing the entire agreement between the parties. Accordingly, we affirm the judgment of the Circuit Court.

4

## II. STANDARD OF REVIEW

An order compelling arbitration is a final and appealable judgment of the trial court. *Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 588, 894 A.2d 547, 551 (2006). "The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law," which we review for legal correctness. *Walther v. Sovereign Bank*, 386 Md. 412, 422, 872 A.2d 735, 741 (2005); *Holloman*, 391 Md. at 588, 894 A.2d at 551. When reviewing a trial court's decision compelling arbitration, our role "'extends only to a determination of the existence of an arbitration agreement.'" *Walther*, 386 Md. at 422, 872 A.2d at 741 (quoting *Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 645, 824 A.2d 87, 95 (2003)).

## III. DISCUSSION

The parties' present dispute concerns the existence of an agreement to arbitrate contained in the Buyer's Order and, in particular, whether multiple documents signed during the purchase and finance of the vehicle may be read together as constituting the entire agreement between the parties to a vehicle sales contract. "The issue of whether an agreement to arbitrate exists is governed by contract principles." *Holloman*, 391 Md. at 590, 894 A.2d at 552; *Walther*, 386 Md. at 425, 872 A.2d at 743 (citation omitted) ("Whether a valid arbitration agreement exists . . . 'depends on contract principles since arbitration is a matter of contract.'"); *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 579, 667 A.2d 649,

654 (1995) (citation omitted) ("Arbitration is 'consensual; a creature of contract. . . . In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process.'").

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." *Buck*, 340 Md. at 580, 667 A.2d at 654. "In construing contracts, Maryland follows the objective interpretation principle. If the language of the contract is unambiguous, we give effect to its plain meaning and do not delve into what the parties may have subjectively intended." *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 354, 863 A.2d 926, 941 (2004). "'[A] party who signs a contract is presumed to have read and understood its terms and as such will be bound by its execution.' . . . '[W]e are loath to rescind a conspicuous agreement that was signed by a party whom now, for whatever reason, does not desire to fulfill that agreement.'" *Koons Ford of Balt., Inc. v. Lobach*, 398 Md. 38, 46, 919 A.2d 722, 727 (2007) (citations omitted).

Petitioners contend that the Circuit Court erred in granting Antwerpen's motion by construing the arbitration provision contained in the Buyer's Order together with the RISC. In Petitioners' view, the RISC constitutes the vehicle sales contract, and it does not contain an arbitration clause. Therefore, Petitioners contend that the RISC and the Buyer's Order, as a matter of law, are separate agreements that may not be read together. In support of their

6

position, Petitioners rely substantially upon the language of COMAR 11.12.01.15A, which Petitioners refer to as the "Single Document Rule." This regulation provides that "[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties." Petitioners, directing this Court to the use of the singular term "an instrument," aver that "[t]his means that, even if a contract in other situations might be comprised of several documents, in a car sale in Maryland COMAR requires all the terms of the contract must be contained in one document, or 'instrument' [sic]."

Where the vehicle is financed by the dealer, Petitioners assert that the RISC alone serves as the "vehicle sales contract," because the RISC contains both the principal amount and interest charged. *See* Md. Code (1977, 2012 Repl. Vol., 2014 Supp.), § 15-311 of the Transportation Article ("A contract for the sale of a vehicle by a dealer shall contain . . . [t]he principal amount charged for the vehicle; [and] any interest charged on the principal amount[.]"). Petitioners further maintain that the RISC, itself, purports to be the entire agreement between the parties because it provides that "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract." Accordingly, the RISC, in Petitioners' view, must include all of the agreements between the parties within the four-corners of that document. Hence, Petitioners conclude that the failure of Antwerpen to include the arbitration provision within the RISC means that no such agreement exists and arbitration may not be compelled. This failure, they contend, renders

7

the RISC and the Buyer's Order inconsistent and, as a result, the documents cannot be read together as one agreement.

Antwerpen argues that, under well-established contract law, the Buyer's Order and RISC may be construed together as evincing the entire agreement of the parties. *See Rocks v. Brosius*, 241 Md. 612, 637, 217 A.2d 531, 545 (1966). Antwerpen points out that, contrary to Petitioners' contention that the RISC contains an integration provision, the RISC incorporates by reference the Buyer's Order and its arbitration provision by providing that "[t]his contract **along with all other documents signed by you** in connection with the purchase of this vehicle, comprise the entire agreement." (Emphasis added). Further, Antwerpen contends that Petitioners have mis-characterized COMAR 11.12.01.15A as a "Single Document Rule." Antwerpen notes that Petitioners have failed to provide any authority using or creating the label "Single Document Rule" in reference to COMAR 11.12.01.15A. This regulation, Antwerpen asserts, "simply does not state that all of the agreements . . . must be in 'a single document.'" Contrary to Petitioners' interpretation, the use of the phrase "an instrument" does not preclude incorporating other documents by reference. Accordingly, Antwerpen asks this Court to affirm the decision of the Circuit Court compelling arbitration.

We disagree with Petitioners that COMAR 11.12.01.15A supplants our longstanding common law contract principles permitting the construction or reading of multiple documents

together as part of a single transaction.  As explained by this Court in *Rocks*, 241 Md. at 637, 217 A.2d at 545:

> A contract need not be evidenced by a single instrument. Where several instruments are made a part of a single transaction they will all be read and construed together as evidencing the intention of the parties in regard to the single transaction.  This is true even though the instruments were executed at different times and do not in terms refer to each other.

*See also Rourke*, 384 Md. at 354, 863 A.2d at 941 ("Where the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect.").

Since 1978, COMAR 11.12.01.15A has provided that "[e]very vehicle sales contract or agreement shall be evinced by an instrument in writing containing all of the agreements of the parties."  *See* 5:12 Md. R. 981 (June 16, 1978); 5:17 Md. R. 1331 (August 25, 1978). Contrary to Petitioners' labeling of this regulation as the "Single Document Rule," the term "single" is absent from the language.  Nor is there any indication in our jurisprudence that, as a result of the use of the singular term "an instrument," a vehicle sales contract may not, as a matter of law, incorporate multiple documents by reference.  To the contrary, the mere use of a singular term such as "an instrument" or "a contract," does not prevent the application of the principles in *Rocks* and *Rourke.*

Petitioners have provided this Court with several opinions, which in Petitioners' view have "consistently and repeatedly reenforced the requirement that all agreements . . . must be contained in one instrument, and have recognized that only the financing agreement or

9

RISC contains all of the agreements of the parties." Upon review, the authorities provided,

none of which are binding upon this Court,[4] offer little more than cursory, unpersuasive

assertions lacking support in our jurisprudence. Indeed, these authorities either provide no

textual support or cite to one of the other unpersuasive opinions Petitioners rely upon to

present their case to this Court.

To the extent the opinions Petitioners have provided this Court suggest that, in the

context of a vehicle sale financed by the dealer, a Buyer's Order may not be construed

together with the RISC, such opinions appear already to have been called into question by

the Fourth Circuit's recent opinion in *Rota-McLarty v. Santander Consumer USA, Inc.*, 700

F.3d 690 (4th Cir. 2012). In *Rota-McLarty*, similar to the instant case, an individual

executed a Buyer's Order—which contained an agreement to arbitrate—and a RISC—which

---

[4] Specifically, Petitioners have provided us with state and federal trial court opinions. *See Ricks v. Wilson Powell Lincoln-Mercury, Inc.*, Case No. 1:10-cv-02342-WDQ (Cir. Ct. Prince George's Cnty., Mar. 28, 2011); *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386 (D. Md. 2011); *Lambert v. Nat'l Motors, Inc.*, Civ. No. WMN-10-3522 (D. Md. May 4, 2011); *Tokarski v. Castle Auto Outlet, LLC*, Civ. No. RDB-09-509 (D. Md. Sept. 25, 2009); Memo to Counsel, *Houston v. Crown Motors*, Civ. No. JFM-02-3859 (D. Md. July 8, 2003).
    Petitioners also cite to two decisions from the intermediate appellate court, *see Sabmd, LLC v. Ross*, No. 2277 (Ct. Spec. App. 2006), *Smith v. Rosenthal Toyota, Inc.*, 83 Md. App. 55, 573 A.2d 418 (1990). With respect to *Smith*, Petitioners rely on a single footnote which (1) addresses an inapplicable act and (2) does not consider the possibility of incorporating by reference an arbitration provision.
    Lastly, Petitioners have provided this Court with a letter of advisement from an assistant attorney general provided to the Motor Vehicle Administration which unequivocally provides that it is "**NOT AN OPINION OF THE ATTORNEY GENERAL**" (emphasis in original) and opinions from other jurisdictions that interpret their own state statutes. *See*, *e.g., Raceway Ford CasesLarkin v. New Century Auto Sales Inc.*, No. 12-13917 (E.D. Mich. Jan. 3, 2014); *Kroupa v. Sunrise Ford*, 92 Cal. Rptr. 2d 42 (Cal. Ct. App. 1999).

10

contained no arbitration agreement—with the dealership during the purchase and financing of an automobile.  *Id.* at 694-95.

In determining whether the arbitration agreement in the Buyer's Order was enforceable, the court noted that:

> Rota–McLarty does advance a novel theory in support of integration on appeal, premised on Md. Code Regs. § 11.12.01.15, which provides that "every vehicle sales contract or agreement shall be evidenced by an instrument in writing containing all of the agreements of the parties." *See* Appellee's Br. at 19. **She seems to argue that the regulation requires one document by itself to constitute the parties' agreement**, and thus we must read the Buyer's Order alone.  Even if this argument is not waived, **Rota–McLarty fails to provide any authority for her interpretation of the cited regulation, nor for the proposition that this regulation supplants an entire established body of Maryland law governing contract interpretation.**

*Id.* at 700 n.8 (emphasis added).  Despite the presence of an integration clause in the RISC, the court concluded that "Rota-McLarty has failed to establish that the RISC's integration clause prevents reading both [the Buyer's Order and the RISC] together as a single agreement."  *Id*. at 700.[5]

---

[5] *Rota-McLarty* is not the only opinion which casts doubt upon Petitioners' assertion that "Maryland courts . . . have consistently and repeatedly enforced the requirement that all agreements of the parties, including arbitration agreements, must be contained in one instrument in vehicle sales transactions, and . . . only the financing agreement or RISC contains all of the agreements of the parties."  For instance, following the Fourth Circuit's decision, an argument nearly identical to that of Petitioners' was rejected by a Maryland state trial court.  *See Whitehead v. Driveline Auto., LLC*, No. 12-36674 (Cir. Ct. Prince George's Cnty., April 18, 2013).  Interestingly, this opinion was issued by the same judge that previously decided *Ricks*, which Petitioners cite to support their position.  *See supra*.

11

Petitioners aver that reliance upon the footnote in *Rota-McLarty* is inappropriate because, in their view, the issue of the "Single Document Rule" had not been properly raised before that court. We need not resolve the present dispute on the basis of *Rota-McLarty*, however. As explained above, Petitioners have failed to provide this Court with any persuasive or binding authority to support their proposition that only a single document by itself may constitute the parties' agreement.

Turning to the language of the documents before this Court, the Buyer's Order and the RISC, reviewed and signed by Petitioners on the same day, indicate an intention that the documents be construed together as part of the same transaction. Notably, the RISC incorporates the Buyer's Order by reference and provides that "**[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement**." (Emphasis added). Petitioners' signatures were required almost immediately following this statement.

Similarly, the Buyer's Order states that "[t]he front and back of this buyer's order, **along with other documents** signed by You in connection with this order, comprise the entire agreement between the parties[.]" (Emphasis added). Once again, Petitioners' signatures follow this provision. We also note that the Agreement to Arbitrate contained in the Buyer's Order refers directly to the RISC in its definition of "disputes." Indeed, the arbitration provisions states, in part, that "[a] Dispute is . . . any monetary claim whether

12

contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, **or any retail installment sale contract**." (Emphasis added). In other words, the arbitration agreement signed and agreed to by Petitioners on the same day as the RISC explicitly states that it applies to disputes arising out of the RISC.

We reject Petitioners' contention that the language, "[b]y signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract" means that the RISC purported to be the sole document considered for the purposes of the agreement between the parties and necessarily superseded the Buyer's Order. Absent from this language is any indication that any prior agreements, such as the Buyer's Order executed only moments prior to the RISC, were no longer of any force or effect as Petitioners suggest. As noted above, one of the agreements contained in the RISC requiring Petitioners' signatures was that "[t]his contract along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement."

**IV. Conclusion**

Accordingly, under our long standing common law contract principles as expressed in *Rocks* and *Rourke*, multiple documents may be construed together as evincing the entire agreement of the parties to a vehicle sales contract. The RISC and the Buyer's Order in the present case indicate an intention that they are to be read together as constituting one transaction.

13

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. PETITIONERS TO PAY THE COSTS IN THIS COURT.**

Circuit Court for Baltimore City
Case No. 24-C-13-002548
Argued: April 1, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 68
September Term, 2014

_____

WILLIE MAE FORD, *et al.*

v.

ANTWERPEN MOTORCARS LTD., *et al.*

_____

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
**Watts, J.,

JJ.

_____

Opinion by McDonald, J., concurring in the
judgment, which Battaglia, J., joins

_____

Filed: June 29, 2015

*Harrell, J., participated in the hearing of the case,
in the conference in regard to its decision and in
the adoption of the majority opinion but he retired
from the Court prior to the filing of the opinion.

**Watts, J., participated in the hearing of this case
but recused herself prior to conferencing and
adoption of this opinion.

In fantasy literature devoted to the battle between good and evil, the allegiance of elves, orcs, dwarfs, and goblins is readily apparent.[1] In the battle between clarity and obfuscation in legal instruments, it is sometimes uncertain which side attorneys will take. This case turns on the drafting and placement of an arbitration agreement in one of several legal documents concerning the sale of a used car.

I have attached to this opinion the "buyer's order"[2] and Retail Installment Sales Contract ("RISC") as they appear, somewhat enlarged, in the materials provided to this Court. The Majority opinion – a model of clarity itself – is able to navigate these documents. But a lay person interested in buying a used car would be well advised to bring along a lawyer, a magnifying glass, and perhaps an English major, to decipher their meaning.

There are significant differences between these two documents. Pertinent to this case, the buyer's order contains fine print in which the purchasers essentially waive future access to the public justice system for any disputes arising out of the transaction in favor of an alternative dispute process.[3] The RISC does not contain such a provision. At issue is

---

[1]J.R.R. Tolkien, The Lord of the Rings (1949).

[2]The phrase "buyer's order" is not actually the title of the document, but, as far as I can tell, appears only in the fine print at the bottom of the front page of the document.

[3]That provision is set out in considerably larger print and much more legible spacing in the Majority opinion. Majority slip op. at 2.

whether the terms of the RISC supersede those of the buyer's order.

The fine print at the bottom of the buyer's order states that "[t]he front and back of this buyer's order, *along with other documents signed by You in connection with this order*, comprise the entire agreement between the parties affecting this purchase..." The RISC contains a similar reference to "all other documents signed by you." There is no indication in either document, nor is the record clear, as to the universe of "other documents" signed in connection with the purchase of this vehicle that are incorporated by reference. In any event, the universe of documents that comprise the transaction is apparently not confined to signed documents. The bottom of the rear side of the "buyer's order" states that "The information that you see on the window form for this vehicle is part of this contract. The information on the window form overrides any contrary provisions in the contract of sale."[4] Similar language appears in a paragraph 5 on the reverse side of the RISC.

In an apparent effort to improve the possibility that a consumer might be aware of all of the terms affecting a purchase of a car, the Motor Vehicle Administration ("MVA") has adopted a regulation that indisputably applies to the transaction in this case. That regulation provides:

> Every vehicle sales contract or agreement shall be evidenced by *an instrument in writing containing all of the agreements* of the parties. It shall be signed by all of the parties before the seller delivers to the buyer the vehicle covered by the agreement.

---

[4]The window form does not appear in the record in this case.

2

COMAR 11.12.01.15A (emphasis added). The plain language of the regulation establishes what might be called a "single instrument rule" for car sales. Ms. Ford and Mr. Beale base their appeal entirely on the notion that this means a *single document* and that the RISC, which does not contain an arbitration provision, is that document. Antwerpen counters that the requisite instrument may be comprised of multiple documents and here includes the buyer's order. The Majority agrees with Antwerpen and concludes that arbitration clause in the buyer's order was not superseded by the RISC.

I agree that a single instrument may be comprised of more than one document and, on that narrow point, given the language of these documents,[5] I join in the judgment. Whether these documents – and whatever else was purportedly incorporated in them – actually comply with the regulation is a question for another day.

Judge Battaglia has advised that she joins this opinion.

---

[5]Had the RISC here contained the language in the RISC analyzed in the 2012 letter of the MVA's counsel – *i.e.*, that "[t]he terms of this contract set forth your entire and only obligation to Seller" – I would have deferred to the agency's interpretation of its own regulation set forth in that letter and concluded that the buyers had no obligation to arbitrate the dispute.

3

DEAL #: 13352    CUST #: 30358

# ANTWERPEN

ANTWERPEN NISSAN
1701 WOODLAWN DRIVE, BALTIMORE, MD 21207
(410)298-4400

| DATE: 04/24/2010 | STOCK #: S00900A |
|---|---|

I hereby order from you, subject to all terms, conditions and agreements contained hereof, the following: ☐ NEW  ☒ USED vehicle ☐ DEMO

| YEAR 2007 | MAKE NISSAN | MODEL SENTRA |
|---|---|---|
| BODY TYPE 4 DOOR SEDAN | TRIM 2.0/2.0S/2.0 | MODEL CODE |
| COLOR WHITE | | KEY CODES /1K |
| VIN 3N1AB61E17L698873 | | ODOMETER 33765 |

**BUYER**

| NAME | WILLIE MAE FORD |
|---|---|
| ADDRESS | 2873 PELHAM AVENUE |
| CITY | BALTIMORE   STATE MD   ZIP 21213 |
| HOME PHONE (410)488-6150 | WORK PHONE (410)455-2642 |
| CELL PHONE (443)257-4969 | |
| DRIV. LIC. # F-630-886-572-594 | STATE MD |
| E-MAIL BLUPRNT09@YAHOO.COM | |

**CO-BUYER**

| NAME | RASHAD EARLE BEALE |
|---|---|
| ADDRESS | 2873 PELHAM AVENUE |
| CITY | BALTIMORE   STATE MD   ZIP 21213 |
| HOME PHONE (410)488-6150 | WORK PHONE (410)332-4633 |
| CELL PHONE (410)900-6744 | |
| DRIV. LIC. # B-400-730-162-313 | STATE MD |
| E-MAIL | |

INSURANCE CO.: STATE FARM
ADDRESS:

INSURANCE AGENT: VINCE VANNEMAN
PHONE NUMBER: (410)321-0101
POLICY/BINDER #: 366 7614-D01-20J
EFFECTIVE DATE: 04/01/2010    EXPIRATION DATE: 10/01/2010

| | |
|---|---|
| BASE PRICE OF VEHICLE ( FOR NEW VEHICLES, INCLUDING ADDITIONAL MANUFACTURER ITEMS AS SHOWN ON THE MONRONEY LABEL) | N/A |
| FREIGHT CHARGE (FOR NEW VEHICLES: AS INCLUDED ON MONRONEY LABEL) | |
| DEALER INSTALLED ITEMS AND CHARGES: | N/A |
| | N/A |
| | N/A |
| SUBTOTAL OF DEALER INSTALLED ITEMS | N/A |
| DEALER WARRANTY IS ONE MONTH OR 1000 MI ON POWERTRAIN ONLY.    SUGGESTED RETAIL PRICE | N/A |
| XXDISCOUNT/PREMIUM | 12000.00 |
| CASH SALES PRICE | 12000.00 |
| DEALER PROCESSING CHARGE (NOT REQUIRED BY LAW) | 100.00 |
| ELECTRONIC REGISTRATION FEE | 20.00 |
| TIRE RECYCLING FEE | 4.00 |
| TAXABLE AMOUNT (LESS TRADE-IN CREDIT OF _____ N/A ) | 12124.00 |

STATE SALES TAX 726.00    TITLE TAX N/A    REGISTRATION FEES 128.00
TITLE FEES 50.00    SECURITY INTEREST 20.00    TEMPORARY TAGS 15.00

| SUBTOTAL OF TAXES, TITLING AND REGISTRATION FEES | 939.00 |
|---|---|

ADDITIONAL ITEMS

| SERVICE CONTRACT | 1599.00 | | |
|---|---|---|---|
| | | | |

| SUBTOTAL OF SERVICE, MAINTENANCE, GAP AND A&H CONTRACTS | 1599.00 |
|---|---|
| TOTAL CASH DELIVERED PRICE | 14662.00 |

| DEPOSIT | N/A | DOWNPAYMENT | 2500.00 | TOTAL CASH DOWN | 2500.00 | |
|---|---|---|---|---|---|---|
| NET TRADE ALLOWANCE | N/A | NET TRADE PAY OFF | N/A | NET TRADE EQUITY | N/A | |
| MANUFACTURER REBATES | | | | | N/A | |

APX. 1

| TOTAL CREDITS | 2500.00 |
|---|---|

TOTAL BALANCE DUE ON DELIVERY    ☐ CASH   ☒ FINANCE   ☐ LEASE | 12162.00 |

CUSTOMER ACCEPTS SALE PRICE AND / OR TRADE ALLOWANCE IN LIEU OF ANY
AND ALL OTHER ADVERTISED SALES AND/ OR PROMOTIONS.

# INTENTIONALLY LEFT BLANK

## DESCRIPTION OF TRADE-IN

| MAKE | MODEL | TYPE | YEAR |
|---|---|---|---|
| | NO TRADE | | |

| ODOMETER | COLOR | VEHICLE IDENTIFICATION NUMBER | |
|---|---|---|---|
| N/A | | | |

### NO LIABILITY INSURANCE FOR BODILY INJURY OR PROPERTY DAMAGE IS INCLUDED UNLESS OTHERWISE NOTED.

#### AGREEMENT TO ARBITRATE DISPUTES

Buyer(s) (also referred to as "You") and Dealer agree that if any Dispute arises, the Dispute will be resolved by binding arbitration under the applicable rules of an alternative dispute resolution agency by a single arbitrator who shall be an attorney or retired judge, with the arbitrator rendering a written decision with separate findings of fact and conclusions of law. An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitrator shall apply the substantive law of the state of Maryland and the arbitration shall take place in the county in which the Dealer is located. All costs and expenses shall be borne as determined by the arbitrator. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. The arbitrator may not award punitive damages. You agree that class-wide arbitration of a Dispute (known or unknown) may be adjudicated in or be the basis for compensation as a result of any class action proceeding. Judgement on an award may be entered by either party in the highest local, state, or federal court, or before any administrative body.

You or Dealer may begin mediation and choose one of the following Alternative Dispute Resolution ("ADR") organizations and its applicable rules: the National Arbitration Forum, Box 50191 Minneapolis, MN 55404-0191 www.arbforum.com), the American Arbitration Association, 335 Madison Avenue, Floor 10, New York, NY 10017-4605 (www.adr.org) or any other established ADR organization not affiliated with a consumer advocacy or business advocacy group. You or Dealer, within ten (10) days after receiving notice of the ADR organization chosen by the other party, may suggest a different established ADR organization which shall become the ADR organization in charge of the mediation unless the party initiating mediation promptly objects in the exercise of its reasonable judgment. You may get a copy of the rules of these or other ADR organizations by contacting the organization or visiting its website. If the chosen ADR organization's rules conflict with this Agreement, then the provisions of this Agreement shall control.

A Dispute is any question as to whether something must be mediated and the terms and procedures of the mediation, as well as any allegation concerning a violation of a sale state or federal statute that may be subject of mediation, any monetary claim whether contract, tort, or other, arising from the negotiation of and terms of the Buyer's Order, any service contract or insurance product, or any retail installment sale contract or lease (but this mediation agreement does not apply to and shall not be binding on any assignee thereof).

Notwithstanding the foregoing, You and Dealer retain any right to self-help remedies, such as repossession and to seek remedies in the State District Court of Maryland for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court, without first instituting mediation. This Agreement shall survive any termination, payoff or transfer of your financing contract if any part of this Agreement is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

The parties understand that they are waiving their rights to a trial and class consideration of all claims and disputes between them not specifically exempted from arbitration in this Agreement.

The front and back of this buyer's order, along with other documents signed by You in connection with this order, comprise the entire agreement between the parties affecting this purchase. No oral agreements or understandings shall be binding. You acknowledge that you have been given the opportunity to review all documents prior to signing them and that you have not signed any documents in blank. By executing this Order, you acknowledge you have read all of its terms and have received a fully completed copy. You certify you are 18 years of age or older. Until made effective, this order is not binding and You may cancel and recover deposit. Signature below constitutes consent by Buyer(s) to receive unsolicited facsimile advertisements at the fax number listed above.

Under Maryland law, a dealer may not place on a vehicle an insignia that advertises the name of the dealer unless the dealer receives the consent of the buyer in the contract for the sale of the vehicle with notice to the buyer of his rights concerning insignias. Also, if a dealer places an insignia advertising the name of the dealer on the vehicle without receiving the buyer's consent, the dealer is required, at the request of the buyer, to remove his advertising and to make repairs as necessary to restore the vehicle to its original appearance at no cost to the buyer. Finally, the dealer can enter into an agreement with the buyer to compensate the buyer for the buyer's consent to place an insignia on the vehicle advertising the name of the dealer. Buyer expressly consents to the placement of dealer's insignia, logo, or other name plate on the vehicle.

THIS ORDER IS NOT EFFECTIVE UNLESS SIGNED AND ACCEPTED
BY DEALER OR HIS AUTHORIZED REPRESENTATIVE

| Buyer's Signature | APX. 2 | Dealer's Signature |
|---|---|---|
| *Willie Mae Ford* | | JAMES JONES |
| BUYER | 04/24/2010 DATE | Salesperson |
| *Rushal Beale* | 04/24/2010 | By |
| CO-BUYER | DATE | Authorized Manager |

## ADDITIONAL TERMS AND CONDITIONS OF SALE

It is further understood and agreed between Dealer and Buyer (and co-buyer, if applicable) (referred to as "You") that the agreement on the reverse side hereof is subject to the following terms and conditions:

1.    New Vehicle Sales - If the manufacturer/distributor changes the suggested retail price of equipment or ordered vehicle, Dealer may change the price accordingly. If the price is increased by Dealer, You may, if dissatisfied therewith, cancel this order in which event if a used motor vehicle has been traded in as part of the consideration for such new motor vehicle, such used motor vehicle shall be returned to You upon payment of a reasonable charge for storage, repairs and reconditioning (if any), or, if such used motor vehicle has been previously sold by Dealer, the amount received therefor, less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said vehicle for sale, shall be returned to You. If the manufacturer/distributor substantially modifies the ordered vehicle design/equipment or does not manufacture or distribute an ordered vehicle, this agreement is voidable by either party upon ten (10) days notice. Dealer shall only be obligated to return the deposit without interest, trade-in vehicle or the cash price of the trade-in vehicle as set forth above at Dealer's discretion.

2.    Trade-In Vehicles - If the used motor vehicle which has been traded in as part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery of such motor vehicle, the used motor vehicle may be reappraised at that time by Dealer and such reappraised value shall determine the allowance made for such used motor vehicle. Trade-in vehicle shall be delivered in same condition as appraised with same equipment. You guarantee to deliver title free and clear of liens or encumbrances within five (5) days of signing this agreement. If pay-off on Your trade-in is more than estimated herein, You shall immediately pay said difference and, if lower, Dealer will return said amount. If a trade-in, title or equipment is not delivered as agreed, Dealer may cancel this purchase order and upon demand receive from You payment of a pay-off on trade-in and/or seek remedies as set forth in Paragraph 3 herein. At Dealer's discretion, You assume risk of loss to trade-in vehicle until title reassigned.

3.    Default - New & Used Vehicle - In the event of default, which includes, but is not limited to (1) Your check is returned without payment; (2) promissory note not timely paid; (3) trade-in vehicle not delivered to dealer; (4) trade-in title not delivered unencumbered; (5) failure to cooperate and sign documents; and/or (6) Your failure or refusal to accept delivery of the motor vehicle ordered hereunder, Dealer shall be entitled, at its discretion, to the choice of remedies in this Agreement, which may be used separately or together, including (1) cancel purchase order; (2) repossess vehicle without notice; (3) rescind the sales transaction; (4) seek collection for amounts due; and/or (5) retain as liquidated damages any cash down payment made by You, and in the event a used motor vehicle has been traded in as part of the consideration for the motor vehicle ordered hereunder, to sell such used motor vehicle and reimburse itself out of the proceeds of such sale for any actual damages suffered by Dealer as a result of such default. Dealer shall be entitled to recover from You, for an event of default, costs for repossession/collection, reasonable interest plus reasonable attorney's fees. Any waiver of all or part of a remedy is not a continuing waiver.

4.    Dealer's Right To Terminate Agreement - New & Used Vehicles - Dealer may cancel this Agreement if: (1) on event of default as defined above; (2) any statement or representation by You is not accurate or truthful; or (3) Dealer cannot deliver vehicle for any reason set forth in Paragraph 1. Dealer's only obligation or liability shall be as stated in Paragraph 1.

5.    Condition Beyond Dealer's Control - Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this order where such failure or delay is due, in whole or part, to any cause beyond the control or without the fault or negligence of Dealer.

6.    Taxes - Unless otherwise expressly provided, the Total Purchase Price for the ordered vehicle specified on the reverse side hereof does not include any taxes imposed by any governmental authority with respect to such vehicle prior to or at the time of delivery of such vehicle to You. You assume and agree to pay any and all such taxes, and any and all other taxes except Dealer's income taxes, imposed on or incidental to the transaction covered by this order, regardless of who may have the primary tax liability.

7.    Documents - You agree to cooperate and execute all documents required by Dealer to complete the sale/lease of a vehicle. The default provisions of Paragraph 3 apply for failure. In the event the Vehicle Sales Contract must be retyped or changed, You agree to execute a new Vehicle Sales Contract so long as there is not a material change in the terms agreed to.

8.    Cash Transaction - In the case of a cash transaction, title to the ordered vehicle shall not pass to You until the Dealer shall have received, in cash, the full amount of the Unpaid Balance. However, the Dealer may, at its discretion, pass the title to the ordered vehicle prior to receipt of the full amount of the Unpaid Balance. The passing of title prior to receipt of the full cash amount of Unpaid Balance shall not relieve Your obligation to pay, in full, the Unpaid Balance as shown on the reverse side hereof. In the event that the transaction covered by the order is not a cash transaction, You agree to execute, before or at the time of delivery of the ordered vehicle, such conditional sales contracts and other instruments as may be required by Dealer.

9.    Security Agreement - You hereby grant Dealer, its successors and assigns, a security interest in the motor vehicle, equipment and accessories to be purchased pursuant to this agreement and such security interest shall remain in effect until all sums due hereunder have been paid in full.

10.    Manufacturer's Warranties - You agree that You have been given the opportunity to read the owner's manual, including the manufacturer's warranty and rustproofing information. The Dealer is not a party to the manufacturer's warranty. In the case of a new motor vehicle or chassis, the printed new manufacturer's new vehicle warranty delivered to You with such vehicle or chassis shall apply. In the case of a used motor vehicle or chassis, the applicability of an existing manufacturer's warranty shall be determined by the terms of such warranty.

11.    Notice Pursuant to the Automotive Warranty Enforcement Act - Under certain circumstances, the Maryland Automotive Warranty Enforcement Act grants to consumers the right to have a manufacturer or factory branch replace a motor vehicle or refund the purchase price during the warranty period, which under the Automotive Warranty Enforcement Act, is the earlier of 15,000 miles of operation or 15 months following delivery to the consumer. The

# INTENTIONALLY LEFT BLANK

Automotive Warranty Enforcement Act requires that if a new motor vehicle does not conform to all applicable warranties during the warranty period, the consumer shall, during such period, report the non-conformity, defect or condition by giving written notice to the manufacturer or factory branch by Certified Mail, Return Receipt Requested.

12.      Estimates - Any amount marked as an "estimate" on this agreement is based on the best information available to the Dealer and is subject to change when the true amount is determined.

13.      Used Vehicle Disclosure - CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE: THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. THE INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

---

**NOTICE**

Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of the goods or services pursuant thereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed the amounts paid by the debtor hereunder.

RO615132 Q

APX. 4

RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number ............ Contract Number ...........

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Creditor-Seller (Name and Address) |
|---|---|---|
| WILLIE MAE FORD 2873 PELHAM AVENUE BALTIMORE MD 21213 BALTIMORE | RASHAD EARLE BEALE 2873 PELHAM AVENUE BALTIMORE MD 21213 BALTIMORE | ANTWERPEN NISSAN 1701 WOODLAWN DRIVE BALTIMORE MD 21207 HOWARD |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2007 | NISSAN SENTRA | 3N1AB51E17L690873 | ☐ personal, family or household<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2500.00 is |
|---|---|---|---|---|
| 15.04 % | $ 6488.88 | $ 12162.00 | $ 18650.88 | $ 21150.88 |

**Your Payment Schedule Will Be:**

| Number of Payments. | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 259.04 | Monthly beginning 06/08/2010 |

Or As Follows:

Late Charge. If payment is not received in full within __15__ days after it is due, you will pay a late charge of __10__ % of the part of the payment that is late, with a minimum charge of $__5__.
Prepayment. If you pay off all your debt early, you will not have to pay a penalty.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information: See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**ITEMIZATION OF AMOUNT FINANCED**
1 Cash Price
  A Cash Price of Motor Vehicle (including accessories, services, and taxes) $ 15000.00 (A)
  B Dealer Processing Charge (not required by law) $ 100.00 (B)
  C Freight Charge $ N/A (C)
  D Other $ N/A (D)
    To Whom Paid N/A
  E Other $ N/A (E)
    To Whom Paid N/A
  Total Cash Price $ 12162.00 (1)
2 Total Downpayment =
  Trade-In : NO TRADE
    (Year) (Make) (Model)
  Gross Trade-In Allowance $ N/A
  Less Pay Off Made By Seller $ N/A
  Equals Net Trade In $ N/A
  + Cash $ 2500.00
  + Other N/A $ N/A
  (If total downpayment is negative, enter "0" and see 4I below) $ 2500.00 (2)
3 Unpaid Balance of Cash Price (1 minus 2) $ 9620.00 (3)
4 Other Charges Including Amounts Paid to Others on Your Behalf
  (Seller may keep part of these amounts):
  A Cost of Optional Credit Insurance Paid to Insurance
    Company or Companies.
    Life $ N/A
    Disability $ N/A $ N/A

APX. 5

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest is required is checked below.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
### Optional Credit Insurance
☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability (Buyer Only)
Premium:
  Credit Life $ N/A
  Credit Disability $ N/A
Insurance Company Name N/A
Home Office Address N/A
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance or credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
☐ N/A ... N/A
  Type of Insurance ... Term
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A
☐ N/A ... N/A
  Type of Insurance ... Term
Premium $ N/A
Insurance Company Name N/A
Home Office Address N/A

Paid to Insurance Company ... $ N/A

C Other Optional Insurance Paid to Insurance Company or Companies ... $ N/A

D Official Fees Paid to Government Agencies ... $ N/A

E Government Taxes Not Included in Cash Price ... $ 726.00

F Government License and/or Registration Fees
LIC/E-FILING/LIEN/TEMP TAG ... $ 187.00

G Government Certificate of Title Fees
(includes $ N/A security interest recording fee) ... $ 50.00

H Optional Gap Contract ... $ N/A

I Other Charges (Seller must identify who is paid and describe purpose)

| to | | for | | $ | |
|---|---|---|---|---|---|
| to N/A | | for Prior Credit or Lease Balance | | $ | N/A |
| to N/A | | for N/A | | $ | N/A |
| to N/A | | for N/A | | $ | N/A |
| to N/A | | for N/A | | $ | N/A |
| to N/A | | for SERVICE | | $ | 1599.00 |

Total Other Charges and Amounts Paid to Others on Your Behalf ... $ 2562.00 (4)

5 Amount Financed (3 + 4) ... $ 18162.00 (5)

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. You may choose the insurance company through which the VSI insurance is obtained. If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ N/A and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

OPTION: ☐ You pay no finance charge if the Amount Financed, Item 5, is paid in full on or before N/A ; Year _____ . SELLER'S INITIALS _____

APX. 6

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X_____
Buyer Signature                        Date

X_____
Co-Buyer Signature                     Date

Returned Check Charge: You agree to pay a charge of $ 15.00 if any check you give us is dishonored on the second presentment.

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4H of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A _____ Mos.
N/A
Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X _____

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED: This contract, along with all other documents signed by you in connection with the purchase of this vehicle, comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding. Upon assignment of this contract: (i) only this contract and the addenda to this contract comprise the entire agreement between you and the assignee relating to this contract; (ii) any change to this contract must be in writing and the assignee must sign it; and (iii) no oral changes are binding. Buyer Signs X _____ Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 03/20/10 Co-Buyer Signs X _____ Date 04/24/10

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____
Seller signs ANTWERPEN NISSAN _____ Date 04/24/10 By X _____ Title FIN MGR

Seller assigns its interest in this contract to CAPITAL ONE AUTO FINANCE _____ (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse            ☒ Assigned without recourse            ☐ Assigned with limited recourse
ANTWERPEN NISSAN                                                               FIN MGR
Seller _____ By _____ Title _____

LAW FORM NO. 553-MD (REV. 4/02) U.S. PATENT NO. D460,782
©2008 The Reynolds and Reynolds Company TO ORDER www.reysource.com; 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

TRUTH IN LENDING COPY

## 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods installed in it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to any right the law gives you to reinstate this contract. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's reasonable fee, as the law allows. You will also pay any court and collection costs we incur as the law allows.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. We may repossess the vehicle with or without resort to judicial process. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.

f. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it as the law allows. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge equal to the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** If a payment is not received in full within 15 days after it is due, you will pay a late charge of 10% of the part of the payment that is late, with a minimum charge of $5. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

covering the vehicle that the vehicle manufacturer may provide. It does not apply at all if you bought the vehicle primarily for personal, family or household use.

Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. **Applicable Law** Federal law and Maryland law apply to this contract. This contract shall be subject to the Credit Grantor Closed End Credit Provisions (Subtitle 10) of Title 12 of the Commercial Law Article of the Maryland Code.

**NOTICE TO BUYER(S) OF NEW VEHICLES: IF YOU ARE PURCHASING A NEW VEHICLE WHICH IS SUBJECT TO A MANUFACTURER'S EXPRESS WARRANTY AND THE VEHICLE DOES NOT CONFORM TO THAT WARRANTY DURING THE WARRANTY PERIOD, YOU MUST GIVE WRITTEN NOTICE OF THE NONCONFORMITY, DEFECT OR CONDITION TO THE MANUFACTURER OR FACTORY BRANCH DURING THE WARRANTY PERIOD BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, IN ORDER TO PRESERVE YOUR RIGHTS UNDER THE MARYLAND AUTOMOTIVE WARRANTY ENFORCEMENT ACT.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" box in the "Primary Use for Which Purchased" section of this contract is checked. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-MD 04/08